J-A23019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.A.P., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: G.B, FATHER | : : : : : : : | |
| | : | No. 694 MDA 2021 |

Appeal from the Decree Entered May 6, 2021
In the Court of Common Pleas of Luzerne County
Orphans' Court at No(s):  A-9072

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:          **FILED NOVEMBER 23, 2021**

Father appeals from the order terminating his parental rights to the child ("Child") he had with Mother. Mother and her husband filed the petition to terminate Father's rights after Father had no contact with the child for ten months. After careful review, we affirm.

Mother and Father were never married and separated before Child's birth. Custody proceedings began shortly after Child's birth. Mother has always exercised primary physical custody of Child, and until 2016, Father regularly exercised partial physical custody.

In 2016, Mother filed a Protection From Abuse ("PFA") petition against Father on behalf of Child. It was her fourth such petition, the previous three all being denied by the court. In the 2016 petition, Mother alleged that Father

_____

[*] Former Justice specially assigned to the Superior Court.

threatened Child with physical violence as discipline, and that Father had in fact once slapped Child's face hard enough to leave a mark on her face. The PFA court granted the petition and imposed a three-year period where Father could have no contact with Child.

Father appealed and this Court affirmed, noting that Father had the opportunity to seek reconsideration of the no-contact order with the PFA court. Father sought reconsideration, but the court maintained the three-year no-contact period.

The PFA order expired on November 8, 2019. There is no dispute that Father had no contact with Child for the following ten months, and on September 11, 2020, Mother and her husband filed the petition for involuntary termination of Father's parental rights. After a hearing, the court granted the petition and terminated Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). This timely appeal followed.

On appeal, Father raises four issues. However, these issues can be distilled into two distinct challenges. First, Father raises three arguments that challenge the court's conclusion that termination of his parental rights was justified under Section 2511(a)(1). Second, Father raises a single argument that termination of his parental rights was not justified under Section 2511(b).

When this Court reviews an order terminating parental rights, we must accept the findings of fact and credibility determinations of the trial court as long as the record supports them. **See In the Interest of D.R.-W.**, 227 A.3d 905, 911 (Pa. Super. 2020). If the findings of fact are supported by the record,

this Court may only reverse the order if the trial court made an error of law or abused its discretion. ***See id***. We may not reverse merely because the record could support an alternate result. ***See id***. Instead, we give great deference to the trial court because trial courts often have the opportunity to observe the parties first-hand over the course of multiple hearings. ***See In re Adoption of K.M.G.***, 219 A.3d 662, 670 (Pa. Super. 2019). Further, the trial court, as the fact-finder, is free to believe all, part or none of the evidence presented and is likewise free to resolve any conflicts in the evidence. ***See id***.

Termination of parental rights is controlled by Section 2511 of the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511. Under Section 2511, a trial court must engage in a bifurcated process prior to terminating parental rights. ***See In re L.M***., 923 A.2d 505, 511 (Pa. Super. 2007). Initially, the trial court must find that the party seeking termination has proven by clear and convincing evidence that the parent's conduct satisfies any one of the eleven statutory grounds set forth for termination under Section 2511 (a). ***See id.***; 23 Pa. C.S.A. § 2511 (a)(1-11). If the trial court finds that one of those subsections has been satisfied, it must then, pursuant to Section 2511(b), determine the needs and the welfare of the child under the best interests of the child standard. ***See In re L.M.***, 923 A.2d at 511; 23 Pa.C.S.A. § 2511(b).

Here, the trial court determined that Mother and her husband met their burden pursuant to Section 2511 (a)(1), which allows for involuntary

termination of parental rights when a parent has failed to perform parental duties for at least six months:

> The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa. C.S.A. § 2511(a)(1). "Parental duties" is a broad concept that includes many requirements that depend on specific circumstances and are impossible to exhaustively list:

> Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. ... [Rather,] the parental obligation is a positive duty which requires affirmative performance … A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles. … Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [their needs].

*In re Z.P.*, 994 A.2d 1108, 1118-1119 (Pa. Super. 2010) (citation omitted). Importantly, any efforts taken by the parent to remedy their failure to perform parental duties after they receive notice of the petition to terminate their rights are irrelevant to the court's analysis. *See* 23 Pa.C.S.A. § 2511(b).

Father first challenges the trial court's conclusion that termination of his parental rights was justified under Section 2511(a)(1). He contends that, under the circumstances, there was no evidence that he intended to relinquish his parental claim to Child, or that he refused to perform his parental duties.

He asserts that Mother has gone to great lengths to deny Father any contact with Child:

> Father testified below that … Mother and her current husband have done everything in their power to deny [Father] access to [Child,] including hiding their whereabouts, address and telephone numbers from [Father,] while filing [PFAs] to intentionally keep him away from [Child. Father] even sent a certified letter demanding custody and visitation to [Mother and her husband] at their last known address, which was returned [as] undeliverable.
>
> Since one (1) month after [Child] was born, [Mother] filed for child support in March 2010, and thereafter [Father] has paid court ordered support for [Child,] even paying when he had been denied access to [Child] for four (4) years.
>
> [Father] has never given up in his attempts to see and enforce his parental rights to [Child,] but [Mother] and her husband have never permitted visitation, hid their whereabouts and continually filed [PFAs] to bar [Father's] custody of [Child. Father's] efforts were impaired by the State-wide and Luzerne County Courthouse closures from March 2020 and thereafter for intermittent periods of time and his access to the Courts [was] clearly reduced.

Appellant's Brief, at 10-12 (citations to reproduced record omitted).

It is clear that significant obstacles have been placed in Father's path to perform his parental duties. And if the trial court's focus had been on the three-year period where Father had been legally barred from any contact with Child, we would be far more hesitant to affirm under § 2511(a)(1).

However, the petition, and therefore the trial court, was focused on Father's conduct after the no-contact order expired in 2019:

> Mother testified that from November 8, 2019 (the expiration of the [PFA] Order) and the time of the filing of the petition to terminate his parental rights on September 11, 2020, Father did

not have any contact with her or [Child. N.T., 1/11/2021, at 25] Mother indicated that since the expiration of the [PFA] Order, Father did not ask for Mother's address, nor did he send any gifts or cards to [Child.] Mother testified that after the PFA order expired, she had a domestic relations hearing with Father. Father never asked Mother to see [Child] at the support hearing, nor did he ask Mother for any contact information in order to see his child. *Id*. 28. Mother stated that no one has sent any gifts to [Child] on Father's behalf since the expiration of the PFA Order in November of 2019 until the present. *Id*. at 27.

Mother testified that she and Father previously communicated through Facebook, by telephone and through mutual friends. *Id*. at 25-26. Mother stated that she still has the same account on Facebook and still maintains the same telephone number since 2016. Mother also stated that she has not prevented Father from contacting her, nor has she blocked Father from communicating with her over the telephone. *Id*. at 26. Mother indicated that in August 2020 she did file a [PFA] petition and was granted a temporary order, but later was denied relief in the final hearing. *Id*. at 29. Mother testified that she believes that Father does pose a risk of harm to [Child] due to his anger. She indicated that Father has not gone through any kind of anger management, individual counseling or even counseling with her and [Child.] *Id*. at 30.

…

Father admitted upon cross examination that he had a contact telephone number for Mother, but simply did not want to try it because he assumed Mother changed her telephone number. Father further stated that not only was he not sure that he had the correct telephone number, but he would not try to contact a third-party in an attempt to contact Mother. Father explained, "That's not how I act." Father simply assumed that Mother changed her telephone number since she changed her telephone number in the past. *Id*. at 82. Father alleged that he spoke to a mutual friend of Mother's who had the same telephone number for Mother as he did. Father claimed that the friend did not attempt to contact Mother on that phone number either. *Id*. at 86.

…

- 6 -

By Father not even trying to contact Mother using her last telephone number in his possession and by Father not attempting to contact Mother on Facebook, Father did not demonstrate a continuing interest in [Child,] nor did Father make a genuine effort to maintain communication and association with [Child.]

Trial Court Opinion, 6/30/2021, at 9-11 (record citations omitted).

The trial court also noted that Father had failed to file an action to enforce his custody rights once the no-contact order expired. The court did not credit Father's excuse that the Covid-19 pandemic had prevented his efforts to file for custody: "the courthouse was open [when the no-contact order expired] in November of 2019 and did not close until March 2020 for a short period of time. During the pandemic, the courthouse was conducting custody conferences and hearings via telephone, via Zoom and/or Microsoft Teams[.]" *Id*., at 12. The court highlighted the fact that Father sought to suspend his child support obligations during the pandemic but failed to check if he could seek custody rights. *See* N.T., 1/11/2021, at 80-81. When confronted with this inconsistency, Father changed his excuse to financial inability to pay for a custody petition. *See id*., at 81-82.

Due to his changing stories, the court found Father's purported excuses incredible. *See* Trial Court Opinion, 6/30/2021, at 13.

Upon review, we note the trial court's findings are all well supported by the record. Further, we cannot conclude that its reasoning constitutes an abuse of discretion or error of law. Father had opportunities to seek contact with Child for over nine months after the no-contact order ended. He availed

himself of none of those opportunities. And we can see no reason to disturb the trial court's credibility determinations regarding Father's excuses for his failures. Accordingly, Father's arguments to the contrary merit no relief on appeal.

We therefore turn to Father's argument that the trial court erred in determining that termination was justified under Section 2511(b). Pursuant to Section 2511(b), the trial court was required to examine whether termination of Father's parental rights would best serve the developmental, physical, and emotional needs and welfare of Child. *See In re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id*., at 1287 (citation omitted).

Importantly, the court was required to consider the effect of permanently severing any emotional bond between Father and Child. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The extent of any bond analysis necessarily depends on the circumstances of the particular case. *See In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). The panel in *In re K.Z.S.* emphasized that, in addition to a bond examination, the court can equally emphasize the safety needs of the child and should consider the intangibles, such as the "love, comfort, security, and stability," the child might have with the custodial parent. *Id.* at 760 (citation omitted).

In addressing these requirements, the trial court highlighted the testimony of Mother's husband ("Stepfather"). Stepfather testified that he had dated Mother since shortly after Child's birth and therefore has known Child since Child was a few weeks old. *See* N.T., 1/11/2021, at 100. He treats Child the same way he treats the other four children he has had and raises with Mother. *See id*. Child refers to him as "daddy." *Id*. Stepfather believes he has a parent/child bond with Child. *See id*., at 105. He testified that Child never asks or talks about Father. *See id*., at 107. He does not believe that termination of Father's parental rights would have any effect on Child. *See id*.

We can find no error of law or abuse of discretion in the trial court's decision to credit Stepfather's testimony. Nor can we say that the court erred or abused its discretion in concluding that termination of Father's parental rights was appropriate under Section 2511(b). Father's claims to the contrary merit no relief on appeal.

As we conclude that the trial court did not err in terminating Father's parental rights, we affirm the decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2021

- 9 -